UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Mark Allen Carr,<br><br>      Plaintiff,<br><br>vs.<br><br>Dierbergs Markets, Inc.,<br><br>      Defendant. | Civil Action No. 4:25-cv-832<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT DIERBERGS MARKETS, INC.'S OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND**

## **INTRODUCTION**

This case belongs in federal court. Consistent with its primary purpose "to open the federal courts" to class actions, *Bell v. Hershey Co.*, 557 F.3d 953, 957 (8th Cir. 2009), the Class Action Fairness Act sets a low bar: minimal diversity, at least 100 class members, and more than $5 million at stake. All three are easily met here.

Minimal diversity is not a close call. Dierbergs operates stores a stone's throw from Illinois and across Missouri, and Carr pleads that the putative class numbers in the thousands, reaching back decades. Dierbergs' customer interactions and common sense confirm that at least *one* class member hails from outside Missouri. That is enough for minimal diversity.

The amount in controversy clears the $5 million bar too. If the Petition makes damages above $5 million possible, the case stays in federal court. Such is the case here. Although Dierbergs disputes Carr's claims, Carr seeks damages, punitive damages, and attorneys' fees under the MMPA for an unlimited class of people. Under the proper analysis, a fact finder *might* legally conclude that the value of the case is more than $5 million, and Carr has not shown that it would be legally impossible to recover such an amount.

Nor do CAFA's narrow exceptions apply. The local-controversy exception demands evidence, not speculation about where customers might live, but Carr has none. And Carr's cursory attempt to invoke the discretionary home-state exception in a footnote only underscores that he cannot meet his burden to deprive this Court of jurisdiction.

Carr's motion to remand should be denied.

# ARGUMENT

I. **The Court has jurisdiction under the Class Action Fairness Act.**

The Class Action Fairness Act confers federal jurisdiction when (1) minimum diversity exists; (2) the proposed class has at least 100 members; and (3) there is more than $5 million in controversy. *Leflar v. Target Corp.*, 57 F.4th 600, 603 (8th Cir. 2023) (citing 28 U.S.C. § 1332(d)). "The party seeking removal under CAFA bears the burden of establishing these jurisdictional requirements by a preponderance of the evidence." *Dammann v. Progressive Direct Ins. Co.*, 856 F.3d 580, 583 (8th Cir. 2017). All three requirements are satisfied here.[1]

A. **Dierbergs satisfied minimal diversity for CAFA jurisdiction.**

Dierbergs easily satisfies the minimal diversity requirement that at least one plaintiff and defendant must be citizens of different states. *See* § 1332(d)(2)(A). "A party's allegation of minimal diversity may be based on information and belief," and "[t]he pleading need not contain evidentiary submissions." *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019) (citations omitted); *see also id.* ("[A] defendant's allegations of citizenship may be based solely on information and belief."); *see generally Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 954 (8th Cir. 2023) (holding that parties can plead allegations based on "information and belief" when "the proof supporting the allegation is within the sole possession and control of [another party] or where the belief is based on sufficient factual material that makes the inference . . . plausible"). That's because the usual presumption against federal jurisdiction, *see McKinnon v. Restoration Hardware, Inc.*, 2022 WL 970882, at *2 (E.D. Mo. Mar. 31, 2022) ("Federal courts ordinarily resolve all doubts about federal jurisdiction in favor of remand" and "strictly construe removal statutes.") (cleaned up); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

---

[1] Carr does not challenge that the proposed class has at least 100 members. *See* Am. Compl. ¶ 22.

2

(1994), *does not* apply to CAFA removal, *see Brunts v. Walmart, Inc.*, 68 F.4th 1091, 1094 (8th Cir. 2023) ("There is no presumption against federal jurisdiction in class action cases."); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("[N]o antiremoval presumption attends cases invoking CAFA."). So Carr's citations to run-of-the-mill, non-CAFA diversity jurisdiction cases are not on point. *See* Doc. 16 at 9 (citing *Haas as Tr. of Bira Rabushka Living Tr. v. Rabushka*, 2023 WL 6879663, at *2 n.1 (E.D. Mo. Oct. 18, 2023), and *Gunapt Dev., L.L.C. v. Peine Lakes, L.P.*, 2021 WL 3737273, at *1 (E.D. Mo. Aug. 24, 2021)).

As Carr also alleges—based on "inform[ation] and belie[f]"—there are "hundreds, and likely thousands" of class members. Doc. 7 (Am. Pet.) ¶ 22. And based on *Dierbergs'* information and belief, at least one of these thousands of class members is a citizen of another state. Doc. 1-3 ¶¶ 6–7; **Exhibit A**, Supplemental Declaration of Gerard Bava ("Supp. Bava Decl."), ¶¶ 6–9. Indeed, two of Dierbergs' 25 Missouri stores (Lemay Plaza and Telegraph Plaza) are within *three* miles of Illinois, and so not surprisingly, Dierbergs is aware that many Illinoisians shop in these two stores. Bava Decl. ¶¶ 5–6; Supp. Bava Decl. ¶¶ 6–7;[2] *see Hicks v. Grimmway Enter., Inc.*, 2023 WL 3319362, at *8 (S.D. Cal. 2023) (denying motion to remand and request for jurisdictional discovery when defendant sold products "at retailers located near the [] state lines at stores frequented by non-residents"). Dierbergs also has a store at the Lake of the Ozarks, a popular vacation destination in Missouri (Lakeview Pointe).[3] Supp. Bava Decl. ¶ 8. Dierbergs is aware from customer interactions that many Kansans and Arkansans, who travel to the Ozarks for vacation, shop at Dierbergs' Lakeview Pointe store. *Id.* ¶ 9. This is enough to establish minimal diversity.

---

[2] *See* Our Stores, Dierbergs, http://bit.ly/45CXzM3 (last visited August 27, 2025).

[3] *Id.*

3

Not only that but Carr seeks to represent a class of every person who bought propane gas and wood from Dierbergs with no temporal or geographic limitation. *See* Doc. 7 ¶ 19 (defining the class as "[a]ll individuals who Defendant charged sales tax for a purchase of the Products"); *id.* ¶¶ 29–33 (alleging that "[a]ll applicable statutes of limitation have been tolled by Defendant's knowing and active fraudulent concealment" and that Dierbergs should be "estopped from relying on any statute of limitations in defense"); *see supra* p. 8–9. Mo. Rev. Stat. § 144.030(23) was enacted in 1979. *See* Act of July 31, 1979, S.B. 218, 80th Gen. Assembl., 1st Reg. Sess., 1979 Mo. Laws. 331 (codified at Mo. Rev. Stat. § 144.030). Since 2005 alone, Dierbergs has sold at least 672,502 units of propane gas and firewood. Supp. Bava Decl. ¶ 5.[4] It is "simply beyond belief" that "not one of those products was purchased by a non-[Missouri]" citizen. *Hicks*, 2023 WL 3319362, at *8; *see also Larsen v. Pioneer Hi-Bred Int'l, Inc.*, 2007 WL 3341698, at *5 (S.D. Iowa 2007) (finding that based on the "potential quantity of bags sold, it is almost certain that over a ten-year period an out-of-state citizen purchased [the product] in Iowa or an Iowan purchased [the product] and has since changed his or her domicile"); *Brunts*, 68 F.4th at 1094 (explaining that federal jurisdiction can be established using "reasonable inferences").

At bottom, neither evidence nor common sense supports Carr's position.

**B.      Dierbergs established the amount in controversy by a preponderance of the evidence.**

At "the pleading stage, the test is whether 'the notice of removal plausibly alleges' that the case *might* be worth more than $5 million." *Leflar*, 57 F.4th at 603 (emphasis in original); *see*

---

[4] Considering the lack of a temporal limitation in the putative class that Carr seeks to represent, *see* Doc. 7 ¶ 19, Dierbergs has updated its prior calculations from the notice of removal of the minimum amount of relevant unit sales and sales tax collected to now reflect sales since 2005, consistent with Carr's Petition.

4

*Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 944-945 (8th Cir. 2012) ("The removing party's burden of describing how the controversy exceeds $5 million constitutes a pleading requirement, not a demand for proof. Discovery and trial come later." (cleaned up)). "When a plaintiff contests the amount in controversy after removal, the party seeking to remove under the Class Action Fairness Act must establish the amount in controversy by a preponderance of the evidence." *Brunts*, 68 F.4th at 1094. This requires the district court to determine "if a fact finder *might* legally conclude that the value of the case is more than $5 million, not whether the damages *are* greater than the requisite amount." *Leflar*, 57 F.4th at 603 (cleaned up; emphasis in original).

If "the removing party has established by a preponderance of the evidence that the jurisdictional minimum is satisfied, remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount." *Bell*, 557 F.3d at 956; *see also Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 (8th Cir. 2013) ("Even if it is highly improbable that the Plaintiffs will recover the amounts Defendants have put into controversy, this does not meet the legally impossible standard."). If not, the case "belongs in federal court." *Leflar*, 57 F.4th at 604 (citation omitted). And because CAFA was "intended to expand substantially federal court jurisdiction over class actions," if the Court "is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." *Adams v. Am. Family Mut. Ins. Co.*, 981 F. Supp. 2d 837, 843 (S.D. Iowa 2013) (quoting S. Comm. on the Judiciary, Class Action Fairness Act of 2005, S.Rep. No. 109–14, at 41 (Feb. 28, 2005)); *see also Goldman v. Grp. Health Plan, Inc.*, 2005 WL 8176951, at *3 (E.D. Mo. Dec. 29, 2005) (same).

### 1.  Punitive Damages are properly considered to calculate the amount-in-controversy.

None of Carr's arguments attacking the amount-in-controversy require remand. Carr first argues that Mo. Rev. Stat. § 510.261.5 prevents this Court from considering punitive damages to calculate the amount-in-controversy. *See* Doc. 16 at 5. Not so. This Court and many others in the district "have consistently held" that Section 510.261.5 does not apply "in federal court proceedings."[5] *Ryan v. United Recovery & Remarketing, LLC*, 2022 WL 1421517, at *2 (E.D. Mo. May 5, 2022) (Ross, J.) (collecting cases); *see also Johnson v. Valvoline, Inc.*, 2025 WL 708645, at *4 (E.D. Mo. Mar. 4, 2025) (Ross, J.); *Aubuchon v. Tate Trucking, LLC*, 2024 WL 4285880, at *5 (E.D. Mo. Sept. 25, 2024) (collecting cases); *Davis v. ALS Express Trucking, Inc.*, 2022 WL 3153712, at *2 (E.D. Mo. Aug. 8, 2022). Because § 510.261.5 does not apply to bar a plaintiff from pleading punitive damages in their complaint, it is not "legally impossible" for Carr to recover punitive damages at the time of removal. *Raskas*, 719 F.3d at 888.

Carr's failure to include an "amount" of punitive damages also does not make it legally impossible to award punitive damages. Doc. 16 at 6. Mo. Rev. Stat. § 509.200 states that "[i]n actions where exemplary or punitive damages are recoverable, the petition shall state separately the amount of such damages sought to be recovered." But like Section 510.261.5, this statute conflicts with Federal Rule of Civil Procedure 8 and thus does not apply.

"A federal court exercising diversity jurisdiction should not apply a state law or rule if (1) a Federal Rule of Civil Procedure 'answer[s] the same question' as the state law rule and (2) the Federal Rule does not violate the Rules Enabling Act." *Johnson*, 2025 WL 708645, at *3 (quoting *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1333 (D.C. Cir. 2015) (quoting *Shady Grove*

---

[5] *Ahmad v. Panera Bread Co.*, 2021 WL 5447000 (E.D. Mo. Nov. 16, 2021) did not analyze whether Rule 8 and § 510.261.5 conflict.

*Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398–99 (2010))). First, both Rule 8 and § 509.200 answer the same question: must punitive damages include the amount of punitive damages sought to be recovered? Rule 8, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought," says no. Fed. R. Civ. P. 8(a)(2), (3). Section 509.200 says yes. The Federal Rules thus "conflict" with Section 509.200 by "'answering the same question' in a different way." *Kilburn v. Autosport Acquisitions, LLC*, 2021 WL 307550, at *2 (E.D. Mo. Jan. 29, 2021). Second, "Rule 8 is valid under the Rules Enabling Act." *Johnson*, 2025 WL 708645, at *4. Put simply, Rule 8—not § 509.200— "controls whether allegations of punitive damages are properly pleaded in a plaintiff's complaint." *Id.* at *3. And under Rule 8, "if a plaintiff intends to seek punitive damages in a case, [Carr must] include a short and plain statement showing that the plaintiff is entitled to such damages," which he did. *Davis*, 2022 WL 3153712, at *2. Carr's failure to plead a specific amount of punitive damages thus does not make it "legally impossible" to recover punitive damages. *Raskas*, 719 F.3d at 888; *see, e.g.*, *Pirozzi v. Massage Envy Franchising, LLC*, 938 F.3d 981, 984 (8th Cir. 2019) ("[P]laintiffs' allegation that they are entitled to punitive damages in an unstated amount raised the amount in controversy to more than $5 million, whether or not they ultimately prove they are entitled to the punitive damages they claim."); *Schott v. Overstock.com, Inc.*, 2021 WL 148875, at *4 (E.D. Mo. Jan. 15, 2021) (including punitive damages in the amount-in-controversy when the complaint sought "punitive damages in an amount to be determined at trial").

Finally, Carr claims that punitive damages should be excluded from the calculation because he did not plead "facts that could support a punitive damages award under the MMPA." Doc. 16 at 6. But Carr's Petition expressly contradicts this assertion. And the Petition controls—not Carr's back-pedaling in his brief. *See Barry v. Nebraska*, 2014 WL 12572869, at *9 (D. Neb. June 2,

7

2014) (finding that the "pleading should control over the contrary representation in [plaintiff's] brief"). Carr alleges that Dierbergs impermissibly charged him local and state sales tax when he bought propane gas and wood for domestic use at two Dierbergs stores. Doc. 7 ¶¶ 11–17. Carr then alleges that "[t]he conduct of Defendant"—the conduct he alleges in the Amended Petition—"was malicious, corrupt, and intentional and/or reckless to a degree sufficient to support an award of punitive damages against Defendant." *Id.* ¶ 59. Put another way, the Amended Petition expressly alleges that the facts *could* "support an award of punitive damages against Defendant."[6] *Id.* In short, Carr "cannot avoid the inclusion of punitive damages here by simply downplaying *[his] own claim for punitive damages.*" *Schott*, 2021 WL 148875, at *5 (emphasis in original).

In the end, there is no bar to considering punitive damages for the amount-in-controversy. The MMPA authorizes an award of punitive damages, *see* Mo. Rev. Stat. § 407.025.2(1); Carr intends to seek them, *see* Doc. 7 ¶¶ 44, 59; and he "could recover them under the law." *Harrington Enters., Inc. v. Safety-Kleen Sys., Inc.*, 42 F. Supp. 3d 1197, 1200 (W.D. Mo. 2013) (rejecting argument that "specific facts or evidence" are necessary to show punitive damages); *see Esget v. Adecco USA, Inc.*, 2012 WL 4856302, at *2 (D. Minn. Oct. 12, 2012) ("[C]ourts have held that the 'mere availability' of punitive damages . . . puts those damages 'in controversy' for diversity purposes.") (collecting cases). Carr has thus failed to show that recovering punitive damages is "legally impossible." *Raskas*, 719 F.3d at 888.

---

[6] *Waters v. Ferrara Candy Co.* incorrectly imposed a "heightened pleading requirement[] for a plaintiff who wishes to claim punitive damages." 2017 WL 2618271, at *3 (E.D. Mo. June 16, 2017), *aff'd*, 873 F.3d 633 (8th Cir. 2017); *see* Doc. 16 at 6 (citing *Waters*). Like any claim for relief, courts ask whether the complaint "contain[s] 'sufficient factual matter' to state a claim for punitive damages that is 'plausible on its face,' as required under *Iqbal*." *Schmidt v. United Airlines, Inc.*, 2019 WL 952103, at *6 (E.D. Mo. Feb. 27, 2019); *see also Beaulieu v. Lam*, 2019 WL 11272916, at *5 (E.D. Mo. Oct. 7, 2019); *Miller v. DNJ Intermodel Servs., LLC*, 2013 WL 6159116, at *2 (E.D. Mo. Nov. 25, 2013).

### 2. The amount in controversy is satisfied even if punitive damages are capped at 5:1.

Even with a 5:1 punitive damages cap on MMPA claims under Mo. Rev. Stat. § 510.265.1(2), the amount-in-controversy is easily satisfied. Though the MMPA is ordinarily subject to a five-year statute-of-limitations period, *see Huffman v. Credit Union of Tex.*, 758 F.3d 963, 969 (8th Cir. 2014); Mo. Rev. Stat. § 516.120(2), the Court may consider damages beyond the statute of limitations because "in reviewing the amount in controversy, the Court should not consider affirmative defenses." *Buckmaster v. Life Ins. Co. of N. Am.*, 2018 WL 1519375, at *2 (E.D. Mo. Mar. 28, 2018); *accord McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1241 (11th Cir. 2013) ("When determining the amount in controversy, we do not consider whether some damages claimed by the plaintiff might be precluded by a statute of limitations."); *McPeters v. LexisNexis*, 2011 WL 2434088, at *3 (S.D. Tex. June 10, 2011) (denying motion to remand in finding that CAFA amount-in-controversy was satisfied because "the Court may not consider defenses such as statutes of limitations in determining the amount in controversy").

This is particularly true when Carr affirmatively seeks to prevent Dierbergs from asserting a statute of limitations defense in alleging that "[a]ll applicable statutes of limitation have been tolled by Defendant's knowing and active fraudulent concealment and denial of the facts alleged throughout the period relevant to this action." Doc. 7 ¶ 29; *see also id.* ¶¶ 30–33 (alleging that Dierbergs is estopped from raising a statute of limitations defense); *see Loy v. BMW of N. Am., LLC*, 2020 WL 5095372, at *2–*3 (E.D. Mo. Aug. 28, 2020) (Ross, J.) (finding MMPA claims subject to tolling based on fraudulent concealment alleged in complaint); *see also Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020) (reversing decision granting motion to remand and finding that the district court erred in "assum[ing] that [defendant] would prevail on a

9

statute of limitations defense against the rest of the class" when plaintiff alleged that it should be tolled based on fraud).

Carr seeks to represent "[a]ll individuals who Defendant charged sales tax for a purchase of the Products" with no temporal limitation. Doc. 7 ¶ 19. Mo. Rev. Stat. § 144.030(23) was enacted in 1979, *see* Act of July 31, 1979, S.B. 218, 80th Gen. Assembl., 1st Reg. Sess., 1979 Mo. Laws. 331 (codified at Mo. Rev. Stat. § 144.030), so—according to Carr—the class includes "all individuals" who bought propane gas or wood since then. *Id.* Even under a conservative calculation, Dierbergs has collected $750,274.65 in sales tax on propane gas and firewood in the past 20 years. Supp. Bava Decl. ¶ 4.

The MMPA authorizes awarding attorneys' fees if Carr prevails. *See* Mo. Rev. Stat. § 407.025.1; *see* Doc. 7 ¶ 38; *id.* at "Prayer for Relief" ¶ i (seeking attorneys' fees). Carr does not challenge that an attorneys' fees award could equal 40 percent of the class award, so the Court may consider this amount. Doc. 1 ¶ 32; *see, e.g.*, *Faltermeier v. FCA US LLC*, 899 F.3d 617, 622 (8th Cir. 2018) (upholding district court's conclusion that attorneys' fees could exceed $1.4 million when potential compensatory damages measured $3,605,010); *Embry v. T. Marzetti Co.*, 2020 WL 5291933, at *3 (E.D. Mo. Sept. 4, 2020) (calculating amount in controversy using 40 percent attorneys' fees award in MMPA case when plaintiff "neither produced her own evidence nor show[ed] that a 40% attorneys' fees award is so outlandish as to amount to a legal impossibility"). A 40 percent fee award on $750,274.65 in damages is $300,109.86, which brings the combined "net amount of the judgment" to $1,050,384.51. Mo. Rev. Stat. § 510.265.1(2); *see Hervey v. Mo. Dep't of Corr.*, 379 S.W.3d 156, 164–65 (Mo. 2012) (holding that "net amount of the judgment" includes attorneys' fees).

Next, the Court may use a 5:1 punitive damages ratio because this ratio is recoverable in MMPA cases "under the law," *Crawford v. thyssenkrupp Materials NA, Inc.*, 2021 WL 4843957, at *3 (E.D. Mo. Oct. 18, 2021), and courts have awarded 5:1 punitive damages in MMPA cases, *see, e.g.*, *Peel v. Credit Acceptance Corp.*, 408 S.W.3d 191, 213–14 (Mo. Ct. App. 2013). It is thus "entirely plausible" that this ratio could be awarded here too. *Schott*, 2021 WL 148875, at *4 (considering ratios awarded in other MMPA cases not whether the facts were analogous). Indeed, Carr's argument (at 8) that Dierbergs must cite "similar cases involving similar conduct" to support its proposed punitive damages ratio has already been rejected. *See Schott*, 2021 WL 148875, at *5 (rejecting argument that the defendant "must do more than simply cite to other MMPA cases" as "not support[ed]" by "[c]ase law"); *see also Harrington*, 42 F. Supp. 3d at 1201 (using 5:1 punitive damages ratio to calculate the amount-in-controversy in MMPA case because "[u]nder Missouri law, the Class's punitive damages award could total up to five times" the net amount of the judgment). Carr could thus recover $5,251,922.55 in punitive damages (5 x $1,050,384.51).

In sum, Carr could recover a total of $6,302,307.06 ($1,050,384.51 + $5,251,922.55). So if the class receives what Carr asks for, Dierbergs could pay more than $5 million in damages.[7] *See Leflar*, 57 F.4th at 603 (requiring courts to ask "if a fact finder *might* legally conclude that the value of the case is more than $5 million") (emphasis in original). And for his part, Carr has not "establish[ed] to a legal certainty that the claim is for less than the requisite amount." *Bell*, 557

---

[7] The amount in controversy could be satisfied in other ways too. For example, if the Court calculates attorneys' fees using a 25 percent fee award ($187,568.66) and a 5:1 punitive damages ratio on the net judgment of $937,843.31, the amount in controversy would be $5,627,059.87. And even if the Court calculates the amount in controversy using a 33.33 percent attorneys' fees award ($250,066.54) and only a 4:1 ratio for punitive damages, *see Schott*, 2021 WL 148875, at *4 (finding that "numerous MMPA cases . . . clearly reflect that a punitive damages award at least four times the combined total of compensatory damages and attorney's fees is entirely plausible here"), that would still yield an amount in controversy of $5,001,705.95 (1,000,341.19 + 4,001,364.76).

11

F.3d at 956. At bottom, Carr "is the master of his complaint, and he [must] own[] the allegations that have landed him in federal court." *Greene*, 965 F.3d at 774. This Court has CAFA jurisdiction, and Carr's motion to remand should be denied.

      **C.**      **Carr fails to meet his burden to establish that the CAFA exceptions apply.**

Assuming CAFA jurisdiction is met, Carr argues that exceptions to CAFA jurisdiction require remand. Carr "has the burden to establish" that these exceptions apply. *Kitchin v. Bridgeton Landfill, LLC*, 3 F.4th 1089, 1093 (8th Cir. 2021). He has not come close.

      1.      Carr argues that remand is required under the local-controversy exception, § 1332(d)(4)(i)(I), because over two-thirds of the class members are citizens of Missouri. *See* Doc. 16 at 9–11. "[A]ny doubt about the applicability of CAFA's local-controversy exception must be resolved against the party seeking remand and in favor of retaining jurisdiction over the case." *Id.* (cleaned up); *see also Hargett v. RevClaims, LLC*, 854 F.3d 962, 965 (8th Cir. 2017) ("The local-controversy exception is narrow.").

Musings about what is "unreasonable" or "unfathomable" aside, Carr has no evidence to support the local-controversy exception. Doc. 16 at 10. The class definition is not limited to Missouri citizens. Doc. 7 ¶ 19 ("All individuals who Defendant charged sales tax for a purchase of the Products."). "The Complaint does not set forth the citizenship of the Plaintiff class." *Luebbers v. BJC Health Sys.*, 2025 WL 2417724, at *2 (E.D. Mo. Aug. 21, 2025) (denying motion to remand after jurisdictional discovery when Plaintiff failed to meet his burden of showing that the Court does not have jurisdiction). And Carr's Missouri residency statistics are irrelevant to proving citizenship—residency and citizenship are not the same thing for the local-controversy exception. *See Hargett*, 854 F.3d at 965–67 (holding that a "resident" is different from a "citizen" for CAFA's local controversy exception"); *see, e.g.*, *Luebbers*, 2025 WL 2417724, at *2 ("The spreadsheet of

12

where current and former potential class members resides does not inform the Court of the citizenship of these persons at the time of removal."); *White Knight Diner, LLC v. Arb. Fs., Inc.*, 2018 WL 398401, at *4 (E.D. Mo. Jan. 12, 2018) ("Merely alleging residency . . . is not enough."). In short, Carr "has failed to provide 'sound evidence' that two-thirds of the class are citizens," and he is "not entitled to the benefit of doubt." *Schulte v. Conopco, Inc.*, 2020 WL 4039225, at *3 (E.D. Mo. July 17, 2020); *see Hargett*, 854 F.3d at 966 ("Plaintiffs like Hargett remain free to meet their burden through evidence or through a class explicitly limited to local citizens, but they are not free to rest on guesswork.").

    2.    The Court should also reject Carr's cursory attempt to invoke the discretionary home state exception under § 1332(d)(3). *See* Doc. 16 at 11 n.2. This argument—raised in a footnote—is not properly before the Court. *See Wildman v. Am. Century Servs., LLC*, 2018 WL 2326627, at *7 (W.D. Mo. May 22, 2018) ("Arguments raised in a footnote are not properly before the Court and will not be considered." (citing *Falco Lime, Inc. v. Tide Towing Co.*, 29 F.3d 362, 367 n.7 (8th Cir. 1994))); *see also Jacam Chem. Co. 2013, LLC v. Shepard*, 101 F.4th 954, 961 n.2 (8th Cir. 2024)). This is all the more true here when the discretionary home state exception requires the Court to "look[] at the totality of circumstances" and "consider" six factors. § 1332(d)(3). Carr's one-sentence recitation of the factors and proclamation that they favor remand is not enough to properly raise the exception for the Court's consideration much less meet his burden to "establish that the interest of justice exception applies or, even if it did apply, that the Court should exercise its discretion to decline jurisdiction." *Shelby v. Oak River Ins. Co.*, 2017 WL 6026672, at *3 (W.D. Mo. Dec. 5, 2017).

13

3. Nor should the Court grant Carr leave to seek jurisdictional discovery.[8] "[I]t is difficult to conceive how []he could identify all the people who purchased [propane gas and wood] in Missouri over the past five years[—or more—]and then determine their citizenship." *Schulte*, 2020 WL 4039225, at *3 (discussing lawsuit involving products sold at Dierbergs). That Dierbergs is aware from "demographic information" received "through its third-party delivery partners," "customer surveys," and "interactions" that at least *one* of its customers who bought propane gas or wood is a non-Missouri citizen to satisfy minimal diversity, *see* Doc. 1-3 ¶¶ 6–7, is a far cry from collecting the citizenship of *every* purchaser to determine whether two-thirds of the entire class has Missouri citizenship. "[L]ast known addresses and other contact information" won't help Carr either. Doc. 16 at 11. Again, "[r]esidents are not the same as citizens."[9] *Schulte*, 2020 WL 4039225, at *3; *see also Hargett*, 854 F.3d at 965–67; *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 884 (9th Cir. 2013) ("That a [class member] may have a residential address in California does not mean that person is a citizen of California."). With no possible way to determine the citizenship of the entire class—let alone identify all the class members—leave to take jurisdictional discovery would be futile and should be denied.

**II.     If the Court grants Carr's motion to remand, the Court should decline to award attorneys' fees because Dierbergs has an objective (and compelling) basis to remove the case.**

Finally, the Court should not award Carr attorneys' fees if it grants his motion to remand. If the Court remands the case, the Court "may require payment of just costs and any actual

---

[8] Whether to allow jurisdictional discovery is within the Court's discretion. *See Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 713 (8th Cir. 2003) (applying abuse-of-discretion standard in reviewing denial of jurisdictional discovery).

[9] Nor can Carr "establish a CAFA jurisdiction exception by filing an amended complaint that redefines [his] proposed class as Missouri citizens after the case has been removed." *Schulte*, 2020 WL 4039225, at *3; *see Hargett*, 854 F.3d at 967.

14

expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).

Carr's request for fees is based on *his* "fanciful" take on the law, not Dierbergs'. Doc. 16 at 11. As explained, punitive damages *are* available now in federal court; the statutory cap does not affect the amount-in-controversy because Carr seeks to represent a class of all purchasers since 1979; and Dierbergs easily put forth enough to show that a fact finder *might* conclude that damages are greater than $5 million. As to minimal diversity, Dierbergs easily satisfied its preponderance of the evidence bar because Dierbergs has evidence that at least one member of the class is an out-of-state citizen, and minimal diversity for CAFA purposes can anyway be pleaded under information and belief. And finally, satisfying the CAFA exceptions is *Carr's* burden not Dierbergs, so there was nothing for Dierbergs to "ignore." Doc. 16 at 12. In the end, even if Dierbergs' "legal theory for removal is ultimately unavailing," its removal petition was not even close to "entirely frivolous," so the Court should decline to award attorneys' fees. *Jackson v. GEICO Cas. Co.*, 2023 WL 2455635, at *2 (E.D. Mo. Mar. 10, 2023) (Ross, J.).

## **CONCLUSION**

The Court should deny Carr's Motion to Remand. If the Court grants the Motion, the Court should deny Carr's § 1447(c) attorneys' fees request.

15

Dated: September 8, 2025

Respectfully submitted,

**HUSCH BLACKWELL LLP**

By: /s/ *Glennon P. Fogarty*
Glennon P. Fogarty, Bar No. 42983MO
Michael Klebanov, Bar No. 66540MO
Tanner M. Cook, Bar No. 71846MO
8001 Forsyth Blvd., Suite 1500
St. Louis, Missouri 63105
(314) 480-1500
(314) 480-1505 Fax
Glennon.Fogarty@huschblackwell.com
Michael.Klebanov@huschblackwell.com
Tanner.Cook@huschblackwell.com

***Attorneys For Defendant Dierbergs Markets, Inc.***

Dated: September 8, 2025

Respectfully submitted,

**HUSCH BLACKWELL LLP**

By: /s/ *Glennon P. Fogarty*
Glennon P. Fogarty, Bar No. 42983MO
Michael Klebanov, Bar No. 66540MO
Tanner M. Cook, Bar No. 71846MO
8001 Forsyth Blvd., Suite 1500
St. Louis, Missouri 63105
(314) 480-1500
(314) 480-1505 Fax
Glennon.Fogarty@huschblackwell.com
Michael.Klebanov@huschblackwell.com
Tanner.Cook@huschblackwell.com

***Attorneys For Defendant Dierbergs Markets, Inc.***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 8th day of September, 2025, the above and foregoing was filed with the Clerk of the Court through the CM/ECF system, which will send electronic notification to all counsel of record.

By: */s/ Glennon P. Fogarty*