**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

Mark Allen Carr,

       Plaintiff,

vs.

Dierbergs Markets, Inc.,

       Defendant.

Case No. 4:25-cv-832

**Plaintiff's Suggestions to Support Motion for Leave to File Second Amended Class Action Complaint or, in the Alternative, to Voluntarily Dismiss Without Prejudice**

**Introduction**

The Court has identified the remaining jurisdictional problem and the two ways it may be solved. Plaintiff's proposed class is not expressly limited to Missouri citizens, so the Court could not infer that over two-thirds of class members are Missouri citizens merely because the challenged sales occurred in Missouri. ECF No. 35 at 14–16. The Court held Plaintiff could meet his burden in two ways: "(1) affidavit evidence or statistically significant surveys showing two-thirds of the class members are local citizens, or (2) redefine the class as only local citizens." ECF No. 35 at 16 (quoting *Hood v. Gilster-Mary Lee Corp.*, 785 F.3d 263, 266 (8th Cir. 2015) and citing *Myrick v. WellPoint, Inc.*, 764 F.3d 662, 665 (7th Cir. 2014)).

Plaintiff does not retreat from that approach or contend that citizenship discovery is prohibitive. With the Court's permission, however, Plaintiff now seeks to elect the other course the Court identified: expressly limit the class to Missouri citizens.

That election follows a related litigation decision. Plaintiff did not, and does not, intend to pursue punitive damages. The operative pleading has punitive-damages allegations, and the Court treated the pleading as written when determining the amount in controversy. ECF No. 35 at 5–14.

1

The proposed Second Amended Complaint eliminates those allegations and expressly disclaims punitive damages. Using Dierbergs' figures, the alleged sales-tax damages of $750,274.65 plus a possible forty-percent fee award of $300,109.86 total $1,050,384.51 before punitive damages. *Id.* at 11–12. Dierbergs crossed CAFA's $5 million threshold by adding $5,251,922.55 in potential punitive damages. *Id.*

Plaintiff does not argue for purposes of his motion that abandoning punitive damages now changes the historical amount in controversy at removal. The point is proportionality. Once the pleading is conformed to the relief Plaintiff intended to seek, and now seeks by way of amendment, the case Plaintiff intends to litigate has about $1 million in nonpunitive value under Dierbergs' own calculation. Even a disciplined, relatively inexpensive citizenship sample consumes party and judicial resources. Because Plaintiff wishes to represent Missouri citizens and no longer seeks the relief that drove Dierbergs' amount-in-controversy calculation above $5 million, the more efficient course is to narrow the pleading rather than spend more resources measuring the citizenship percentage of a broader class Plaintiff does not intend to represent.

The amendment also arrives while the Eighth Circuit is considering the precise CAFA issue raised by a post-removal Missouri-citizen class amendment. In *Vick v. Fresh Green, LLC*, the Western District of Missouri granted leave to make essentially that amendment and later remanded under *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025). *Vick v. Fresh Green, LLC*, No. 4:25-cv-00739-DGK, 2026 WL 1590121 (W.D. Mo. June 3, 2026). The Eighth Circuit accepted review under § 1453(c), and the appeal is pending as No. 26-2247. Briefing is complete. Congress requires accepted CAFA remand appeals to be decided on an expedited timetable. 28 U.S.C. § 1453(c)(2)–(3).

Rule 15 favors allowing Plaintiff to make these narrowing litigation choices. If the Court concludes otherwise, Rule 41(a)(2) provides an alternative that likewise avoids unnecessary

2

jurisdictional expense. Plaintiff is candid about what dismissal would mean: he intends to refile the narrowed action in Missouri state court, limiting the proposed class to Missouri citizens and omitting punitive damages. Under *Tillman v. BNSF Railway Co.*, 33 F.4th 1024 (8th Cir. 2022), that candor matters, and a desire to proceed elsewhere is not dispositive where a plaintiff supplies a proper justification grounded in judicial economy and the Rule 41 factors.

## Background

Plaintiff's operative Amended Class Action Petition challenges Dierbergs' alleged practice of charging state or local sales tax on propane gas and wood purchased for domestic use. ECF No. 7 ¶¶ 6–10. It asserts claims under the Missouri Merchandising Practices Act, unjust enrichment, and money had and received. *Id.* ¶¶ 34–69. The current class definition is: "All individuals who Defendant charged sales tax for a purchase of the Products." *Id.* ¶ 19. The definition has no citizenship limitation.

Dierbergs removed under CAFA. In resolving Plaintiff's motion to remand, the Court found minimal diversity plausibly alleged and found Dierbergs' amount-in-controversy calculation supported by enough evidence. ECF No. 35 at 3–14. As relevant here, the Court found no fault with a calculation that began with $750,274.65 in alleged tax damages, added $300,109.86 as a potential forty-percent fee award, and then applied Missouri's five-times punitive-damages cap. *Id.* at 11–14. The resulting nonpunitive subtotal was $1,050,384.51; punitive damages supplied another $5,251,922.55. *Id.* at 12.

The Court then turned to CAFA's local-controversy exception. It was uncontested that Dierbergs is a Missouri citizen, the principal injuries occurred in Missouri, and no similar class action had been filed during the preceding three years. *Id.* at 14. The unresolved question was whether over two-thirds of the proposed class were Missouri citizens. *Id.* at 14–16.

3

The Court rejected an inference based merely on Missouri purchases and residency statistics, but emphasized that Plaintiff remained free to satisfy his burden with evidence or a redefined local class. *Id.* at 16. The Court also explained that a random sample can be expanded if an initial result is close to two-thirds and can resolve the issue with less evidence if the result is lopsided. *Id.* at 16–17.

The Court cautioned that phone numbers and mailing addresses do not themselves prove citizenship and pointed to *McAllister v. St. Louis Rams, LLC* as an example of a disciplined survey that asked sampled purchasers about residence and intent to remain. *Id.* at 17. The Court then authorized limited citizenship discovery and cautioned that this discovery should not become a second litigation or be overly burdensome. *Id.* at 18.

Plaintiff has now reassessed the case he wishes to litigate. He intends to pursue actual damages and the other nonpunitive remedies pleaded, but not punitive damages. He also seeks to represent Missouri citizens, not a broader class that includes non-Missouri citizens. The proposed Second Amended Complaint therefore narrows the class to people who were Missouri citizens as of the date this action was commenced, and eliminates punitive damages. No claim, defendant, challenged transaction, or liability theory is added.

## Argument

### I. Leave to amend should be freely granted.

Rule 15(a)(2) provides that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The familiar considerations are undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice, and futility. *Dennis v. Dillard Dept. Stores, Inc.*, 207 F.3d 523, 525 (8th Cir. 2000); *Foman v. Davis*, 371 U.S. 178, 182 (1962). None is present here.

4

**A. The amendment only narrows the class and the relief sought.**

The proposed amendment does not change the alleged sales-tax practice, the purchases at issue, the legal theories, or Dierbergs' alleged conduct. Every person who would fall within the amended class already falls within the existing class. The citizenship amendment only excludes people Plaintiff no longer seeks to represent. The punitive-damages amendment likewise only subtracts relief Plaintiff no longer seeks.

That matters for prejudice. Dierbergs has investigated and briefed the same alleged conduct and the same three claims that will remain after amendment. It will not need to defend a new factual predicate or legal theory. The amendment instead reduces the potential class and removes the largest category of damages from Dierbergs' own jurisdictional calculation.

The Western District reached the same conclusion in *Vick*. The plaintiffs there sought to limit their proposed class to Missouri citizens after removal. The court granted leave because the amendment excluded potential plaintiffs rather than adding new parties, did not inject new factual predicates, and did not prejudice the defendants. *Vick v. Fresh Green, LLC*, 2026 WL 280493, at *2 (W.D. Mo. Feb. 3, 2026). The same reasoning applies here, with the additional narrowing effect of eliminating punitive damages.

**B. The amendment reflects considered litigation choices and promotes proportionality.**

Plaintiff's decision not to seek punitive damages is not a new factual allegation; it is an election about relief. The operative pleading inadvertently requested punitive damages, and the Court understandably relied on that request in its jurisdictional analysis. ECF No. 35 at 5–14. Plaintiff now seeks to make the pleading match the relief he actually intends to pursue.

That election changes the economics of the remaining jurisdictional dispute. The Court's order records Dierbergs' nonpunitive calculation as $750,274.65 in alleged tax damages plus $300,109.86 in potential fees, or $1,050,384.51. *Id.* at 11–12. The additional $5,251,922.55 that

5

took the calculation above CAFA's threshold was potential punitive damages. *Id.* at 12. Plaintiff does not ask the Court to revisit the historical amount-in-controversy determination on this basis. But proportionality relates to whether the parties should now spend more resources proving the citizenship ratio of a class Plaintiff wishes to narrow.

*Hood* points to a disciplined sampling method and cites *Myrick* as an example. Counsel need not choose between determining every class member's citizenship and relying on assumptions. A random sample may suffice; if the result is lopsided, less evidence is needed, while a result near two-thirds may require a larger sample and statistical assistance. *Hood*, 785 F.3d at 266 (citing *Myrick*, 764 F.3d at 665); ECF No. 35 at 16–17. Plaintiff agrees. The point is not that sampling cannot be done economically. The point is that it remains an avoidable satellite expense where Plaintiff seeks only a Missouri-citizen class.

Even a small sample must be drawn from a defensible frame, sampled people must be contact, citizenship requires domicile rather than a phone number or current address, nonresponses must be handled, and an equivocal initial result may require more work. *Id.* at 17. Those steps may be justified when the broader class is the class a plaintiff tries to represent. They are not the most economical way to litigate a roughly $1 million nonpunitive case when Plaintiff affirmatively elects to represent only Missouri citizens.

**C. The amendment is not bad faith merely because it may affect federal jurisdiction.**

Plaintiff is candid that narrowing the proposed class to Missouri citizens may affect this Court's jurisdiction under CAFA. That consequence does not make the amendment improper. The Supreme Court has emphasized a plaintiff is "the master of the complaint" and that the plaintiff's control over the claims and parties to be litigated "extends beyond the time her first complaint is filed." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025). A plaintiff therefore may

6

amend a complaint in a manner that brings the suit "either newly within or newly outside a federal court's jurisdiction." *Id.* at 35–36.

The Supreme Court unanimously reaffirmed that principle this year in *Hain Celestial Group, Inc. v. Palmquist*, 146 S. Ct. 724 (2026). There, the Court explained the identity of the party seeking to alter the case matters because the plaintiff generally has the right to choose whether to proceed in federal or state court. *Id.* at 733. Citing *Royal Canin*, the Court specifically recognized this control includes "a plaintiff's ability to amend the complaint to 'bring the suit either newly within or newly outside a federal court's jurisdiction.'" *Id.* (quoting *Royal Canin*, 604 U.S. at 35–36).

Those decisions do not dispense with Rule 15's ordinary requirements or mean that every jurisdiction-affecting amendment must be allowed. They do establish, however, that a jurisdictional consequence does not itself convert an otherwise legitimate pleading choice into bad faith. The relevant question remains whether the proposed amendment reflects undue delay, bad faith or dilatory motive, causes undue prejudice, or is futile. *Dennis*, 207 F.3d at 525.

Here, the circumstances independently demonstrate the amendment reflects legitimate litigation and case-management choices. Plaintiff seeks to narrow the proposed class to the Missouri citizens he wishes to represent and to eliminate punitive damages that he does not intend to pursue. The amendment therefore ***subtracts* persons and relief**; it does not add a defendant, claim, transaction, theory of liability, or new category of affirmative relief. Every person who would remain within the proposed class is already encompassed by the existing class definition.

Eliminating punitive damages also materially changes the economics of further jurisdictional litigation. In determining the amount in controversy, the Court identified $750,274.65 in alleged tax damages and $300,109.86 in potential attorneys' fees—a combined nonpunitive amount of approximately $1.05 million. ECF No. 35 at 11–12. The amount exceeded

7

CAFA's $5 million threshold only after potential punitive damages were included. *Id.* Plaintiff does not contend that deleting punitive damages now retroactively changes the amount in controversy at removal. Rather, the point is one of proportionality: after conforming the pleading to the relief Plaintiff intends to seek, additional expenditures directed solely toward determining the citizenship percentage of a broader class become substantially less justified.

Nor does Plaintiff contend that the citizenship inquiry necessarily would be prohibitively expensive. The Eighth Circuit has recognized statistically significant sampling as an appropriate means of proving aggregate class citizenship. *Hood*, 785 F.3d at 266. And *Myrick* explains that counsel may begin with a random sample, determine the citizenship of the sampled class members, and extrapolate to the class as a whole; if the result is sufficiently "lopsided," the question may be resolved without substantially more evidence, while a result near the statutory two-thirds line may require additional sampling and statistical analysis. 764 F.3d at 665. But even that more economical approach requires constructing an appropriate sampling frame, selecting class members randomly, determining their citizenship as of the legally relevant date, addressing nonresponses, and potentially expanding the sample or retaining a statistician.

The Court has already recognized the alternative to undertaking that exercise. In ordering jurisdictional discovery, the Court explained that Plaintiff could establish the citizenship requirement through evidence or "redefin[ing] the class as only local citizens." ECF No. 35 at 16 (quoting *Hood*, 785 F.3d at 266). With the Court's permission, Plaintiff now seeks to elect that latter course. Doing so eliminates a satellite factual inquiry concerning the citizenship percentage of a broader class that Plaintiff no longer wishes to represent and permits the parties to devote their resources to the merits of the substantially narrower controversy Plaintiff intends to litigate.

The circumstances closely resemble *Vick*. There, the plaintiffs expressly informed the court that they sought to narrow the proposed class to Missouri citizens and intended thereafter to seek

8

remand. The district court found no bad faith. It reasoned the proposed amendment excluded potential plaintiffs rather than adding parties with little connection to the case, narrowed the litigation, caused no demonstrated prejudice, and reflected the plaintiffs' choice to represent Missouri citizens asserting Missouri-law claims. *Vick*, 2026 WL 280493, at *2.

The same reasoning applies here. Plaintiff does not seek to manufacture a new controversy or introduce parties for the purpose of defeating jurisdiction. He seeks to narrow an existing controversy by removing non-Missouri citizens from the proposed class and abandoning punitive damages he never intended to pursue. The fact that those legitimate choices may also affect the appropriate forum supplies no basis to find bad faith under Rule 15.

Nor does a potential dispute over the **jurisdictional effect** of a post-removal class amendment make the amendment itself futile. *Vick* correctly separated the two questions. The defendants' argument that a later amended complaint should not control the remand analysis was an argument concerning the effect of an amendment once allowed—not a reason to prohibit the amendment itself. *Id*. The distinction is particularly appropriate here because the Eighth Circuit is presently deciding that effect question in Appeal No. 26-2247.

**D. The pending *Vick* appeal favors allowing the case to be narrowed now.**

After the *Vick* court granted leave, it held that *Royal Canin* required the operative Missouri-citizen pleading to control and remanded under CAFA's mandatory local-controversy and home-state exceptions. *Vick*, 2026 WL 1590121. The Eighth Circuit accepted a § 1453(c) appeal, now No. 26-2247, presenting whether *Royal Canin* permits that result notwithstanding 28 U.S.C. § 1332(d)(7) and pre-*Royal Canin* Eighth Circuit CAFA authority.

Congress designed that appeal to move quickly. Once a court of appeals accepts a CAFA remand appeal, it must 'complete all action on such appeal, including rendering judgment,' within sixty days after the appeal was filed, subject to the extensions in § 1453(c)(3). 28 U.S.C.

§ 1453(c)(2)-(3). The accepted appeal is already fully briefed. Thus, binding Eighth Circuit guidance on the precise issue should arrive shortly.

Allowing the amendment now does not prejudge *Vick*. It simply defines the case Plaintiff wishes to litigate. The Court can then address the jurisdictional consequence of that pleading with the benefit of binding Eighth Circuit guidance, rather than requiring further factual work to determine the citizenship ratio of a class Plaintiff no longer seeks to represent.

### E. To the extent Rule 16 applies, good cause exists.

No general scheduling order setting a deadline to amend pleadings appears to govern this request. To the extent Rule 16(b)(4) nevertheless applies, good cause exists. The request responds directly to the Court's March 25 order identifying a redefined local class as one method of resolving citizenship; Plaintiff's later decision to eliminate punitive damages; and the subsequent acceptance of the *Vick* appeal, which will provide binding guidance on the jurisdictional effect of the proposed amendment. The amendment also reduces, rather than expands, the work remaining in the case.

### II. If leave to amend is denied, the Court should alternatively allow dismissal without prejudice.

Because Dierbergs has answered, voluntary dismissal requires a court order under Rule 41(a)(2). The Rule allows dismissal "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The Eighth Circuit directs district courts to consider whether the plaintiff has presented a proper explanation, whether dismissal would waste judicial time and effort, and whether dismissal would prejudice the defendant. *Tillman*, 33 F.4th at 1027–28.

Plaintiff recognizes *Thatcher v. Hanover Insurance Group, Inc.*, 659 F.3d 1212 (8th Cir. 2011), which reversed a Rule 41(a)(2) dismissal in a CAFA case where the district court did not address whether dismissal was an improper forum-shopping measure. *Tillman*, however, explains

10

what *Thatcher* requires and what it does not. A district court must examine the plaintiff's stated reason. But the fact that a plaintiff intends to refile elsewhere does not automatically bar dismissal; otherwise Rule 41(a)(2) dismissals without prejudice would often be impossible. *Tillman*, 33 F.4th at 1028–30.

*Tillman* specifically distinguished *Thatcher* because the *Thatcher* plaintiff "offered *no* justification for dismissal without prejudice other than a desire to escape federal jurisdiction" and did not adequately explain why abandoning the claims needed to avoid CAFA benefited the class. *Id.* at 1028–29 (discussing *Thatcher*). Here, Plaintiff supplies the missing explanation.

### A. Plaintiff provides a proper explanation beyond a bare preference for forum.

Plaintiff is candid: if amendment is denied and dismissal is granted, he intends to refile in Missouri state court a narrower action that (1) limits the proposed class to Missouri citizens and (2) does not seek punitive damages. That is not hidden forum maneuvering. It is the same case Plaintiff first asks this Court for permission to litigate through amendment.

The reasons for those choices are substantive and economic. Plaintiff does not intend to pursue punitive damages. Once they are removed, Dierbergs' own figures place the nonpunitive controversy at about $1.05 million. ECF No. 35 at 11–12. Plaintiff also intends to represent Missouri citizens. The Court has recognized that a Missouri-citizen class eliminates the factual need to prove a two-thirds citizenship ratio. *Id.* at 16. Continuing to spend resources on citizenship sampling for a broader class therefore serves no litigation objective Plaintiff wishes to pursue.

This is materially different from seeking dismissal simply because an adverse ruling seems imminent. No summary-judgment motion is pending. Dierbergs' motion to dismiss is stayed and has not been adjudicated. ECF No. 35 at 1–2, 18–19. Plaintiff is not trying to erase an adverse merits determination. He seeks to narrow the case before the parties incur more expense on a

11

threshold jurisdictional inquiry and while the Eighth Circuit is poised to decide the legal consequence of that same narrowing amendment.

### B. Dismissal would conserve, not waste, judicial resources.

The Court and the parties have invested substantial effort in the jurisdictional issues, including full briefing and the March 25 order. Plaintiff does not minimize that work. But those efforts are not wasted by dismissal. The order resolved many legal questions, identified the exact remaining citizenship issue, and provided the roadmap that prompted the present narrowing request.

The relevant question is also prospective: whether dismissal now avoids additional judicial and party resources. It does. The Court has warned that jurisdictional discovery should not become a second litigation. ECF No. 35 at 18. A disciplined *Myrick* process may be manageable, but it still requires citizenship evidence that goes beyond addresses and phone numbers and may require a larger sample or expert work if the initial result is close. *Id.* at 16-17.

There are also unresolved, good-faith disputes concerning the scope and mechanics of that jurisdictional discovery. The parties have conferred and narrowed some issues, but they remain apart on others concerning what information must be produced and what is necessary to construct and implement an appropriate citizenship inquiry. If the case proceeds under the existing class definition, those disputes will require additional conferral, briefing if they cannot be resolved, and potentially further Court involvement before the parties even reach the sampling and citizenship-determination process itself. Plaintiff does not suggest that either side's position is unreasonable. The point is simply that resolving those disputes will itself consume party and judicial resources that become unnecessary if Plaintiff is permitted to narrow the class to the Missouri citizens he actually seeks to represent.

Dismissal, if amendment is unavailable, avoids that ancillary proceeding altogether. It would eliminate not only the expense of conducting citizenship sampling, but also the threshold expense of resolving disputes over the discovery needed to conduct that sampling.

The pending *Vick* appeal makes further investment still less efficient. Section 1453(c)'s compressed review period means binding guidance on the controlling legal issue is expected shortly. Requiring the parties to resolve outstanding discovery disputes and then complete a factual citizenship exercise for a class Plaintiff no longer seeks to represent while the legal effect of the alternative class definition is under expedited appellate review would not advance efficient adjudication.

### C. Dierbergs would suffer no unfair legal prejudice.

Rule 41(a)(2) protects against unfair legal prejudice, not merely the prospect of defending a later suit. *Tillman* reiterates that courts generally permit dismissal where the only prejudice is the need to defend a later action. 33 F.4th at 1030 (citing *Paulucci v. City of Duluth*, 826 F.2d 780, 782 (8th Cir. 1987)).

Dierbergs would retain every substantive defense available to the narrowed claims. The factual theory would be the same. Much of the legal work already performed—including briefing on the MMPA, equitable claims, and tax issues—would remain usable. Plaintiff also does not object to the existing protective order continuing to govern confidential material produced in this action, and the Court may impose reasonable terms under Rule 41(a)(2) if needed to avoid duplication.

Dismissal would also reduce Dierbergs' exposure rather than enlarge it. The refiled action Plaintiff describes would omit punitive damages and exclude non-Missouri citizens. The possibility that the narrower action would proceed in Plaintiff's originally selected state forum is not, by itself, unfair legal prejudice under *Tillman*.

13

## Conclusion

The proposed amendment makes the pleading match the case Plaintiff intends to litigate: a Missouri-citizen class seeking nonpunitive relief arising from Dierbergs' alleged collection of Missouri sales tax on Missouri purchases. It narrows rather than expands the case, creates no new discovery or merits burden, and eliminates the need for a separate factual proceeding about the citizenship percentage of a broader class. Rule 15 favors leave.

If the Court denies leave, Plaintiff alternatively requests dismissal without prejudice under Rule 41(a)(2). Plaintiff has disclosed the intended narrowed refiling and supplied reasons beyond a bare desire to change forums: abandonment of punitive damages, a materially smaller nonpunitive controversy, elimination of unnecessary citizenship discovery, and imminent appellate guidance on the amendment Plaintiff first asks this Court to allow.

For those reasons, Plaintiff respectfully requests the relief stated in his Motion.

**ONDERLAW, LLC**

By:    */s/ Jesse B. Rochman*
Martin L. Daesch, #40494
Jesse B. Rochman, #60712
110 E. Lockwood Ave.
St. Louis, MO  63119
(314) 963-9000 (telephone)
(314) 963-1700 (facsimile)
daesch@onderlaw.com
rochman@onderlaw.com
*Attorneys for Plaintiff*

## Certificate of Service

I certify that on August 10, 2026, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all attorneys of record.

*/s/ Jesse B. Rochman*

14