**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| Mark Allen Carr,<br><br>Plaintiff,<br>vs.<br><br>Dierbergs Markets, Inc.,<br><br>Defendant. | Civil Action No. 4:25-cv-832-JAR<br><br>**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND OR, IN THE ALTERNATIVE, TO VOLUNTARILY DISMISS WITHOUT PREJUDICE** |

## INTRODUCTION

Defendant Dierbergs Markets, Inc. ("Dierbergs") respectfully submits this opposition to Plaintiff Mark Allen Carr's motion for leave to amend or, in the alternative, to voluntarily dismiss without prejudice (ECF No. 42) (the "Motion"). Plaintiff's Motion is a transparent attempt to again avoid litigating this case in federal court, despite Dierbergs' proper removal of this case under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a), and 1453. Even after Plaintiff specifically sought, was granted, and received jurisdictional discovery, he now seeks to negate his own request for jurisdictional discovery in favor of a new tactic to effect remand.

Plaintiff's Motion should be denied in full. Plaintiff's proposed amendments are futile, are sought after undue delay, and would prejudice Dierbergs. And Plaintiff's alternative request to voluntarily dismiss his claims for the express purpose of refiling the case to avoid federal jurisdiction without proper explanation is explicitly barred by Eighth Circuit precedent. In short, Plaintiff's attempt to reset the case after receiving exactly what he asked for and what was ordered by this Court—jurisdictional discovery—is unwarranted and should be denied.

**BACKGROUND**

This case has been pending in this Court for over a year. ECF No. 1, Notice of Removal, filed June 6, 2025. The parties have fully briefed a motion to remand and a motion to dismiss, both of which were stayed by the Court's March 25, 2026, Order directing the parties to complete jurisdictional discovery by June 25. ECF No. 35. Dierbergs subsequently filed its answer. ECF No. 36. Dierbergs later submitted an unopposed motion for extension of time to conduct jurisdictional discovery until August 10, which the Court granted. ECF Nos. 37, 38.

Plaintiff propounded jurisdictional discovery, and Dierbergs responded and provided Plaintiff with the requested data. Jurisdictional discovery is now complete. Yet on August 10, the day jurisdictional discovery closed—and nearly five months after the Court ordered it—Plaintiff filed the instant Motion seeking leave to amend his complaint to eliminate federal jurisdiction or, alternatively, to voluntarily dismiss his claims without prejudice so that he could refile them in state court. ECF Nos. 42, 43.

Plaintiff seeks to amend his pleading in two ways: (1) to redefine the class to include only Missouri citizens; and (2) to eliminate any request for punitive damages. ECF No. 43 at 5. His stated purpose for this amendment is to avoid having to "spend more resources" establishing that CAFA's local controversy exception applies (*id.* at 2)—an exception Plaintiff himself invoked and for which he sought, and was granted, jurisdictional discovery. Failing that, Plaintiff requests leave to voluntarily dismiss his suit without prejudice so that he may refile in state court, except this time with a more carefully crafted petition that is not susceptible to removal under CAFA. *Id.* at 10–11. In other words, Plaintiff wants this Court's blessing to go forum shopping.

The Court should deny Plaintiff's Motion in its entirety.

## LEGAL STANDARD

### I. Motion to Amend[1]

Plaintiff cannot amend as a matter of course and must instead seek the court's leave. Fed. R. Civ. P. 15(a). While Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires," the Court may deny leave if "there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008) (quotation marks and citation omitted).

### II. Motion to Voluntarily Dismiss

Because Dierbergs has already filed an answer to Plaintiff's amended complaint, Plaintiff's request for voluntary dismissal is controlled by Rule 41(a)(2). *See Thatcher v. Hanover Ins. Grp., Inc.*, 659 F.3d 1212, 1213 (8th Cir. 2011). Under Rule 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." In considering whether the terms of voluntary dismissal are proper, the Court "should consider factors such as whether the party has presented a proper explanation for its desire to dismiss; whether a dismissal would result in a waste of judicial time and effort; and whether a dismissal will prejudice the defendants." *Thatcher*, 659 F.3d at 1213–14 (quoting *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 950 (8th Cir. 1999)). "Likewise, a party is not permitted to dismiss merely to escape

---

[1] Plaintiff suggests that Rule 16's good cause standard may apply, and, if so, good cause exists for leave to amend. As no scheduling order has been entered in this case setting a deadline to amend pleadings, Rule 16's good cause standard likely does not control. *See Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) ("If a party files for leave to amend outside of the court's scheduling order, the party must show cause to modify the schedule.") (citing Fed. R. Civ. P. 16(b)). But even if Rule 16's good cause standard does apply, because Plaintiff cannot show that amendment would be proper even under Rule 15's more liberal standard, he certainly cannot establish good cause for amendment under Rule 16.

an adverse decision nor to seek a more favorable forum." *Id.* at 1214 (quoting *Hamm*, 187 F.3d at 950).

## ARGUMENT

### I. Leave to amend should be denied.

Leave to amend should be denied. Plaintiff's proposed amendment (which, tellingly, does not address any of the substantive flaws in his pleading) would be futile, the effect of the amendment (which threatens to deprive Dierbergs of its hard-fought, rightful forum) would substantially prejudice Dierbergs, and his motion (which was filed after over a year of costly and time-consuming jurisdictional motion practice and discovery) is unduly delayed.

#### A. Plaintiff's proposed amendments are futile.

As an initial matter, Plaintiff's Motion should be denied for the simple reason that his proposed amendments would not survive Rule 12(b)(6). "An amendment is futile if the amended claim could not withstand a motion to dismiss under Rule 12(b)(6)." *Cheeks v. Belmar*, 162 F.4th 899, 907 (8th Cir. 2025) (quotation marks and citation omitted).

A motion to dismiss Plaintiff's amended complaint has already been briefed. ECF No. 22. In the motion to dismiss and accompanying memorandum of law, Dierbergs argued that Plaintiff's amended complaint fails to state a claim. *Id.*; *see also* ECF No. 23. Plaintiff's proposed second amended complaint makes no attempt to correct the deficiencies in the amended complaint that Dierbergs identified in its motion to dismiss. Plaintiff concedes as much. ECF No. 42 at 1 ("The amendment adds no claim, defendant, transaction, or factual theory."). Plaintiff's proposed second amended complaint therefore contains the same fatal flaws identified in the motion to dismiss and should be dismissed. Amendment would therefore be futile and leave to amend should be denied.

**B. Plaintiff's proposed amendments are prejudicial.**

Plaintiff does not hide that he seeks to amend his complaint for the specific purpose of forum shopping to avoid federal jurisdiction. ECF No. 43 at 6. But he downplays the seriousness of this issue and its discordance with Eighth Circuit precedent.

The Eighth Circuit has recognized that Dierbergs' right to removal is a substantial right. *Thatcher*, 659 F.3d at 1214–15 ("As the right to remove an action which falls within the jurisdiction of the federal courts is a substantial right, the federal courts . . . should be astute not to permit devices to become successful which are used for the very purpose of destroying that right.") (quoting *Jones v. Mosher*, 107 F. 561, 564 (8th Cir. 1901)). Plaintiff's motion and tactics here are transparently designed to disrupt Dierbergs' substantial right to removal. Put more bluntly, Plaintiff—having initially lost the motion to remand and being unwilling (or unable) to carry his burden after jurisdictional discovery—wants to game the system and get a do-over. This is precisely the sort of "device" that *Thatcher* warns courts "not to permit."

The Eighth Circuit's recent decision in *Vick v. Fresh Green, LLC* is not to the contrary. There, the Eighth Circuit held that amending a class definition to eliminate diversity under CAFA divests the district court of jurisdiction. ___ F.4th ____, 2026 WL 2443852, at *1 (8th Cir. 2026). But it did not answer, or even consider, the antecedent question of whether allowing such an amendment was proper in the first instance. Here, the answer to that question is clear: allowing Plaintiff—after over a year of litigation, multiple rounds of briefing, and extensive and expensive jurisdictional discovery—to deprive Dierbergs of its "substantial right" to federal jurisdiction would be prejudicial. Amendment can and should be denied on this basis alone.

Plaintiff's promise to forgo punitive damages does not mitigate this prejudice, because the promise is legally ineffectual. The Supreme Court has made clear that a putative class

representative "cannot legally bind members of the proposed class before the class is certified." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013). In an attempt to evade CAFA jurisdiction, the plaintiff in *Standard Fire* stipulated prior to class certification that he and the putative class would not seek more than $5 million in aggregate damages. *Id.* at 590–91. But the Court found the stipulation improper because, until a class is certified, the putative class representative "does not speak for those he purports to represent." *Id.* at 592–93. The plaintiff's stipulation was thus not truly binding and was to be disregarded for purposes of determining jurisdiction. *Id.* at 593. The Court further cautioned that crediting such a nonbinding damages-limiting stipulation would "exalt form over substance" and run counter to CAFA's "primary objective" of "ensuring Federal court consideration of interstate cases of national importance." *Id.* at 595 (citation omitted).

This Court has repeatedly enforced *Standard Fire*'s holding. *See, e.g.*, *Muller v. Blue Diamond Growers*, 2022 WL 4119947, *2–3 (E.D. Mo. Sept. 9, 2022) (upholding CAFA jurisdiction despite plaintiff's stipulation to limit recovery of the entire class); *Bell v. Walgreens Boots All., Inc.*, 2022 WL 17987039, *2–3 (E.D. Mo. Dec. 29, 2022) (upholding CAFA jurisdiction despite plaintiff's stipulation to not recover more than $5 million). So has the Eighth Circuit. *See, e.g.*, *Faltermeier v. FCA US LLC*, 899 F.3d 617, 621 (8th Cir. 2018) (recognizing that, post *Standard Fire*, pre-certification stipulations cannot bind absent class members or otherwise reduce the amount in controversy).

Plaintiff, in essence, tries to make the prejudice to Dierbergs more palatable by promising to limit the total recovery he seeks. But because that promise is unenforceable, and inconsistent with District, Circuit, and Supreme Court precedent, the prejudice to Dierbergs remains.

**C. Plaintiff's undue delay further prejudices Dierbergs.**

Plaintiff's proposed amendments come too late. Plaintiff does not explain why he waited *over a year* to seek leave to limit his sought-after damages and class definition. True, Plaintiff intimates that his primary purpose for amendment is to seek remand based on his reading of the Supreme Court's decision in *Royal Canin*. But the Supreme Court decided *Royal Canin* nearly six months *before* Dierbergs removed this case. Plaintiff had ample time to read and develop his remand strategy months ago.

Instead of seeking leave to amend immediately upon removal to pursue the legal theory he now asserts, Plaintiff sought remand on a completely different theory. And, when faced with Dierbergs' strong opposition, Plaintiff *specifically requested, and was granted, jurisdictional discovery*. ECF No. 27 at 7 ("If the Court concludes otherwise and finds the record incomplete, the Court should order jurisdictional discovery, not assume jurisdiction."); ECF No. 35 (granting Plaintiff's request for jurisdictional discovery).

Dierbergs has fully responded to Plaintiff's requests for jurisdictional discovery and provided extensive documentation to Plaintiff, requiring significant investment of fees and time. Plaintiff, for his part, sat and waited, and then moved for leave to amend (i) more than nineteen months after *Royal Canin*'s publication, (ii) more than fourteen months after this case was removed, and after seeking, negotiating, and obtaining jurisdictional discovery over a five-month period, and (iii) on the exact day jurisdictional discovery closed. Plaintiff makes absolutely no attempt to explain the reason for his delay, nor does Plaintiff explain why the Court should not resolve his motion for remand immediately now that jurisdictional discovery is closed. Plaintiff simply chalks up the delay to an epiphanic—nay, serendipitous—realization that, suddenly, the jurisdictional discovery he specifically requested is not worth pursuing.

In truth, Plaintiff wants a redo to avoid the expense of obtaining expert opinions regarding jurisdictional discovery (or, perhaps, to avoid the fact that the data Dierbergs provided does not show what Plaintiff hoped it would regarding the citizenship of Dierbergs' customers). Such delay tactics, coupled with an attempt to inject a new legal theory that has been available to Plaintiff from the outset of the case, require denial of the motion for leave to amend. *See Stotesbery v. Muy Pizza-Tejas, LLC*, No. 22-cv-1622, 2024 WL 4564183, at *3 (D. Minn. Oct. 24, 2024) (denying motion for leave in part because the motion was "merely another effort to change the jurisdictional landscape, via a new legal theory and different procedural mechanism.") (footnote omitted).

Further, Plaintiff's delay has already prejudiced Dierbergs, and amendment would only further compound this prejudice. Dierbergs has incurred substantial attorney fees and costs opposing remand, filing its motion to dismiss, filing its answer, and responding to and producing jurisdictional discovery. Amendment would lead to yet another round of briefing on the issue of remand on a completely new legal theory. Such delay, sought on the same date as the close of jurisdictional discovery, is unnecessary and prejudicial.

## II. Voluntary dismissal should be denied.

Plaintiff makes one point exceedingly clear: he seeks voluntary dismissal for the express purpose of avoiding the federal forum. ECF No. 43 at 11 ("Plaintiff is candid: if amendment is denied and dismissal is granted, he intends to refile in Missouri state court a narrower action that (1) limits the proposed class to Missouri citizens and (2) does not seek punitive damages."). Yet Plaintiff fails to provide any appropriate reason for dismissal. Plaintiff's request for voluntary dismissal should be denied because (1) Plaintiff expressly seeks dismissal to avoid federal jurisdiction, (2) dismissal would waste the court's time and effort, and (3) dismissal would prejudice Dierbergs.

*First*, Plaintiff seeks dismissal for the improper (and confessed) purpose of forum shopping. Plaintiff's reliance on *Tillman* is misplaced. There, the Eighth Circuit found that the court did not abuse its discretion by granting the plaintiff's motion to voluntarily dismiss. *Tillman v. BNSF Railway Co.*, 33 F.4th 1024, 1031 (8th Cir. 2022). It did so in part because the plaintiff provided proper reasons for dismissal, namely "to avoid multiplicitous litigation and the risk of inconsistent verdicts . . . ." *Id.* at 1028. Plaintiff presents no similar reason to dismiss other than to avoid federal jurisdiction, and, in fact, dismissal and refiling along the lines Plaintiff proposes would subject Dierbergs to *more* potential litigation and inconsistent rulings in different jurisdictions, not less.

Plaintiff's first explanation, that his choice to dismiss is "substantive and economic" is not an appropriate reason for dismissal. Plaintiff again declares his desire to disclaim punitive damages, which Dierbergs has already shown he cannot do under *Standard Fire*. *See* Section I.B, *supra*. Instead, voluntary dismissal appears to be an attempt to avoid imminent adverse ruling on Plaintiff's motion for remand, not an attempt to benefit the named Plaintiff or absent class members. This consideration weighs handily against dismissal.

*Second*, Plaintiff is wrong that dismissal would not waste judicial resources. It obviously would. The Court and the parties have already expended significant time and resources litigating this Court's jurisdiction. Plaintiff admits as much. ECF No. 43 at 12 ("The Court and the parties have invested substantial effort in the jurisdictional issues . . . ."). Yet, Plaintiff attempts to erase that effort by dismissing this action for the express purpose of avoiding federal jurisdiction. This is precisely the waste of judicial time and effort that precludes voluntary dismissal here.

Without citation, Plaintiff claims the resources conservation consideration is also prospective. *Id.* Notably, Plaintiff's explanation of how future resources may be conserved by

avoiding additional jurisdictional litigation focuses primarily on Plaintiff and Dierbergs' resources, not the Court's. But the focus of the inquiry is on whether dismissal will conserve "*judicial* time and effort." *Thatcher*, 659 F.3d at 1213–14 (emphasis added). Here, the Court has already expended significant judicial resources attempting to resolve the issue of jurisdiction. All of the Court's efforts will be wasted if dismissal is granted. While the issue of jurisdiction still requires resolution, jurisdictional discovery is closed, and the only remaining issue—Dierbergs' customers' citizenship at time of removal—is narrow and straightforward and will require less judicial resources than has already been expended. This factor weighs heavily against dismissal.

*Third*, Plaintiff is similarly wrong about the potential prejudice to Dierbergs. If dismissal is granted and Plaintiff files his claim in Missouri state court on behalf of only Missouri citizens, Dierbergs' substantial right to removal will be wrongly defeated. *See Thatcher*, 659 F.3d at 1214–15; *see also Carlsen v. Fla. Health Scis. Ctr. Inc.*, 2023 WL 3057416, at *4–*5 (M.D. Fla. Apr. 24, 2023) (relying on *Thatcher* and denying plaintiff's motion to voluntarily dismiss without prejudice). Dierbergs would also be at risk of defending not only against Plaintiff's purported class but any other similar lawsuits from customers who are citizens of other states, multiplying the litigation.

Further, despite Plaintiff's assertion now to the contrary, nothing would currently prevent Plaintiff, or a competing class representative, in the future from changing course again and seeking punitive damages in a Missouri class action against Dierbergs. *See* Mo. Rev. Stat. § 510.261.5 (precluding claims for punitive damages in initial civil pleadings but permitting court approved amendment of pleadings to later include punitive damages claims under proper circumstances). For each of these reasons, Dierbergs faces significant prejudice if dismissal is granted, and this factor also weighs heavily against dismissal.

In weighing all of these factors and considering Plaintiff's explicit purpose of seeking dismissal to avoid federal jurisdiction, the Court should deny Plaintiff his requested alternative relief.

In the event that the Court grants Plaintiff's Motion and permits voluntary dismissal, such order should be contingent on Plaintiff reimbursing Dierbergs for all fees and costs incurred in removing the case, defending against the motion for remand, and participating in jurisdictional discovery. *See Galva Union Elevator Co. v. Chicago & N.W. Transp. Co.*, 498 F. Supp. 26, 27–28 (N.D. Iowa 1980) (relying on Rule 41(a)(2)'s provision that a court may dismiss an action without prejudice upon any "terms and conditions as the court considers proper" to condition voluntary dismissal upon plaintiff's payment of defendant's costs in removing the case and opposing voluntary dismissal); *Belle-Midwest, Inc. v. Mo. Prop. & Cas. Ins. Guar. Ass'n*, 56 F.3d 977, 978–79 (8th Cir. 1995) ("In granting a motion for voluntary dismissal, district courts typically impose the condition that plaintiff pay the defendant the reasonable attorney's fees incurred in defending the suit.") (citation omitted). While such reimbursement will not cure the prejudice to Dierbergs, it will mitigate some of the monetary impact.

**CONCLUSION**

For the reasons stated above, the Court should deny Plaintiff's motion in its entirety.

Dated: August 21, 2026

Respectfully submitted,

**HUSCH BLACKWELL LLP**

By: /s/ *Tanner M. Cook*
Glennon P. Fogarty, Bar No. 42983MO
Michael Klebanov, Bar No. 66540MO
Tanner M. Cook, Bar No. 71846MO
8001 Forsyth Blvd., Suite 1500
St. Louis, Missouri 63105
(314) 480-1500
(314) 480-1505 Fax
Glennon.Fogarty@huschblackwell.com
Michael.Klebanov@huschblackwell.com
Tanner.Cook@huschblackwell.com

***Attorneys for Defendant Dierbergs Markets, Inc.***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 21, 2026, the above and foregoing was filed with the Clerk of the Court through the CM/ECF system, which will send electronic notification to all counsel of record.

By: */s/ Tanner M. Cook*